# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ERNESTO RIVERA,

        Plaintiff,

    v.                               Case No. 14-C-6

KETTLE MORAINE CORRECTIONAL
INSTITUTION, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Ernesto Rivera filed this civil rights action under 42 U.S.C. § 1983 alleging that six nurses at Kettle Moraine Correctional Institution violated the Eighth Amendment prohibition of cruel and unusual punishment by their deliberate indifference to his serious medical needs. More specifically, Rivera alleges that the nurses failed to properly respond to his complaints of severe abdominal pain, which began on the evening of June 17, 2013, and delayed having him seen by a physician and/or transferred to a hospital until the afternoon of June 19, 2013. Upon his arrival at the hospital, it was determined that his appendix was inflamed and surgery was performed.

This case is before the court on Defendants Palm and Robinson's motion for summary judgment. Defendants and Plaintiff have also filed cross motions regarding certain inadvertently stipulated to evidence. For the reasons that follow, Defendants' motion for summary judgment (ECF No. 63) will be denied, Defendants' motion to withdraw inadvertently stipulated documents from evidence and clarify scope of stipulation (ECF No. 82) will be denied, and Plaintiff's Rule 7(h) expedited non-dispositive motion to strike Defendants' objections (ECF No. 84) will be denied.

# BACKGROUND

At all times relevant to this suit Plaintiff Ernesto Rivera was a prisoner at Kettle Moraine Correctional Institution. On the evening of June 17, 2013, Plaintiff began experiencing the symptoms of severe stomach pain, vomiting, and nausea. Plaintiff spoke with a correctional officer, requesting that he be sent to the Health Services Unit (HSU) located at a separate building within the institution. The officer called the HSU and, after a brief discussion with the nurse, handed the phone to Plaintiff. Plaintiff told the nurse about his symptoms and denied having either gas or the flu. The nurse refused to see Plaintiff and recommended walking and drinking fluids. Around 3:50 a.m. on June 18, 2013, Plaintiff again approached the same officer, complaining of severe pain in his side. The officer explained that no nurse was on duty and allowed Plaintiff to take a shower in an effort to alleviate the pain.

Correctional officers drove Plaintiff to the HSU at 6:00 a.m. on June 18, 2013 and Plaintiff was evaluated by Nurse Lisa Hocutt at around 6:25 a.m. During the examination, Plaintiff rated his pain at an intensity of 10 out of 10 and told Hocutt about the nausea and vomiting. Throughout the evaluation Plaintiff was hunched and grabbing the right side of his abdomen. Hocutt recorded that Plaintiff suffered from human immunodeficiency virus (HIV), rated his pain as a 10 out of 10, and that his abdomen was tender on palpation. Hocutt recommended Plaintiff drink fluids and walk to alleviate the pain, informing him that she believed he was likely suffering from the flu or gas. Plaintiff disagreed, stating that the pain was so severe he thought something was wrong with his appendix. Plaintiff's request to see a doctor was denied. Hocutt issued Plaintiff a box of antacids and instructions to return if his symptoms did not improve.

- 2 -

Later on June 18, 2013, Plaintiff approached a guard and informed him that his symptoms had not improved. The guard called the HSU and allowed Plaintiff to speak with the nurse. Plaintiff again explained that he was suffering from severe stomach pain on the right side of his abdomen. The nurse again told Plaintiff that it was the flu or gas and explained that he needed to drink fluids and walk it off. Plaintiff again stated that he believed that it was his appendix and asked to be sent to the doctor. The nurse refused to see him or refer him to a doctor.

Around 7:00 p.m. on June 18, 2013, Plaintiff again requested medical care. Due to his pain, Plaintiff was transported to the HSU by van. During this evaluation, Plaintiff was examined by Nurse Debra Palm. During the examination Plaintiff was bent over at the waist grasping the right side of his abdomen. Plaintiff explained that for the past two days he had been suffering from severe stomach pain and nausea, was vomiting, and had diarrhea. Plaintiff repeated that he would rate his pain intensity as a 10 out of 10. Nurse Palm consulted Plaintiff's medical history which noted Plaintiff's earlier visit and HIV-positive status. Nurse Palm also reviewed the "Abdominal Pain Nursing Protocol," which stated that an inmate who is suffering from severe abdominal pain and also has an HIV diagnosis should be referred to a doctor on an urgent basis. Plaintiff told Nurse Palm about his earlier treatment and the lack of improvement in his symptoms. Nurse Palm opined that Plaintiff had the flu or gas. Plaintiff disagreed, again stating that he could not walk or sleep and that he believed there was something wrong with his appendix. When Plaintiff asked to see a doctor, Nurse Palm told him that he could not see the on-site doctor until June 20, 2013. Realizing that he could not wait two days to see a doctor, Plaintiff asked to be sent to an off-site doctor. Nurse Palm denied his request and recorded that Plaintiff was suffering from pain. Nurse Palm scheduled Plaintiff to see the doctor on June 20, 2013, gave him Tylenol, and sent him back to his housing unit.

- 3 -

At about 8:00 a.m. on June 19, 2013, Plaintiff was again seen for his severe stomach pain by Nurse Hocutt. During the examination Plaintiff was bent over at the waist grasping the right side of his abdomen. Plaintiff explained how he was suffering from severe stomach pain and recurring diarrhea. Plaintiff reported that his pain was a 9 out of 10 on an intensity scale. Plaintiff stated that he thought something was wrong with his appendix and requested to see an off-site doctor. Nurse Hocutt refused to refer Plaintiff to an off-site doctor, informing Plaintiff that fluids and walking would help. She also gave him Imodium to help alleviate his diarrhea.

During two more occasions on the morning of June 19, 2013, Plaintiff approached correctional officers regarding his medical problems. During the first encounter Plaintiff explained his symptoms. During the second encounter Plaintiff stated that he felt his stomach was going to burst. On both occasions the officer called the HSU and spoke to a nurse. During the first call, the nurse refused to see Plaintiff at that time. During the second, the officer informed the HSU nurse of Plaintiff's complaint that his stomach was going to burst and that his pain had not improved. The nurse again refused to treat Plaintiff, stating that they would when they had time. The officer recorded that he spoke to Nurse Beth and Nurse Kim during the two calls.

Sometime after 1:00 p.m. on June 19, 2013, Plaintiff lost consciousness and was found on the floor of his cell by a correctional officer. Plaintiff was then transported to the HSU and seen by Nurse Palm, who immediately sent him to the emergency room at St. Agnes Hospital for further evaluation. An initial CT scan at the hospital did not reveal a rupture in the appendix, though the surgeon suspected that Plaintiff may have already had perforated gangrenous appendicitis. Plaintiff's expert opined that it is probable that Plaintiff's appendix was starting to rupture at some point in the afternoon on June 19, 2013. On June 20, 2013, emergency surgery was performed to remove

- 4 -

Plaintiff's appendix. As a result of the rupture in his appendix, the surgery was more complicated and the recovery more lengthy than expected.

Plaintiff filed this case against six nurses, alleging that they had been deliberately indifferent to his serious medical need. Service was unsuccessfully attempted on Nurses Beth and Depaemk and the Wisconsin Department of Justice states that they cannot determine who those nurses are. On June 12, 2014, default as to Nurse Hocutt was entered for failure to timely answer. Nurse Karin Graf filed a motion for summary judgment on September 15, 2015. Plaintiff chose not to oppose Graf's motion for summary judgment and this Court granted Graf's motion on November 9, 2015, dismissing all claims against Graf with prejudice. Defendants Palm and Robinson filed this motion for summary judgment on September 15, 2015.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis.1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

- 5 -

## B. Deliberate Indifference

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 830–31 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

### Nurse Palm

An inflamed appendix is an objectively serious medical condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) ("[A]n appendix on the verge of rupturing easily meets [the standard for an objectively serious condition]."). Defendants do not contest that point. Instead, Defendants argue that Plaintiff cannot establish that Nurse Debra Palm knew of any serious risk to Rivera's

- 6 -

health prior to the afternoon of June 19 (when she sent Plaintiff to the hospital) or that Nurse Palm's conduct deviated from the accepted professional standard. *See Gayton v. McCoy*, 593 F.3d 610, 622–23 (7th Cir. 2010) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir.1996)) ("[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment."). Defendants also challenge the sufficiency and admissibility of Plaintiff's expert report.

Plaintiff has put forth sufficient evidence to show that Nurse Palm may have been deliberately indifferent to his serious medical needs. It is not necessary that Palm was subjectively aware of Plaintiff's appendicitis, just that she knew of "a substantial risk of harm to the inmate and disregarded the risk." Here, Palm knew that Plaintiff was suffering from severe "10/10" abdominal pain, that he was HIV positive, and that he had diarrhea. Despite these symptoms, Palm did not send Plaintiff to urgent care. Instead, Palm gave Plaintiff Tylenol for pain and wrote that he should see a doctor in two days. Plaintiff's expert states that Palm should have sent Plaintiff to the emergency room for urgent medical care and that the failure to do so was a reckless indifference to Plaintiff's serious medical need. Plaintiff certainly faced increased suffering and—according to Plaintiff's expert—Plaintiff's appendix likely ruptured due to Palm's delay. Given these facts, a reasonable jury could conclude that Palm was subjectively aware that Plaintiff faced a substantial risk of harm and disregarded that risk. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (holding that granting summary judgment was inappropriate where a jury could infer from the evidence that officers knew of a serious medical need and failed to act).

Defendants argue that Nurse Kim Robinson is entitled to summary judgment because Plaintiff has failed to present any medical evidence that her actions or inaction detrimentally impacted Plaintiff. Defendants cite *Langston v. Peters* for the proposition that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." 100 F.3d 1235, 1240 (7th Cir. 1996) (emphasis added by court) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995)). According to Defendants, because Plaintiff's expert report did not opine specifically on the impact of any delay in treatment caused by Robinson's inactions, Robinson is entitled to summary judgment. *See Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (noting that "a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental" in order to prove an allegation of deliberate indifference); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (same).

Contrary to Defendants' assertion, Plaintiff has presented evidence that Robinson's actions detrimentally impacted Rivera. On June 19, 2013, a guard called the HSU on Plaintiff's behalf, telling the nurse that Plaintiff believed his stomach was going to burst and that Plaintiff's condition had not improved. The nurse refused to see Plaintiff and explained to the guard that Plaintiff would have to wait until they had time to see him. Plaintiff's expert has opined that this delay likely caused Plaintiff's appendix to rupture. Further, the guard wrote that he had spoken to Nurse Kim, which Robinson assumes refers to her. Therefore, a general question of material fact exists on whether Robinson was deliberately indifferent to Plaintiff's serious medical need.

## C. Motion to Withdraw and Motion to Strike

After the motion for summary judgment was fully briefed, Defendants filed a motion to withdraw inadvertently stipulated document from evidence and to clarify scope of stipulation. On the same day, Plaintiff filed a Rule 7(h) expedited non-dispositive motion to strike Defendants' objections to Plaintiff's expert witness testimony and report. At the heart of both of these motions was Defendants' inadvertent stipulation to the admissibility of Plaintiff's expert report. The stipulation stated that the parties "waive any and all objections to the authenticity and admissibility of the foregoing documents for purposes of summary judgment proceedings in this case." (Parties Stipulated Exs. 2, ECF No. 67-1). The "foregoing documents" included Exhibit 1005: "Holmburg Deposition Transcript (with exhibits)." *Id*. at 1. Defendants now request that this Court remove Dr. Holmburg's expert report from the stipulated exhibits and from evidence. The basis for Defendants' request is that Defendants only intended to agree to the admissibility of Dr. Holmburg's deposition transcript, not his expert report. Conversely, Plaintiff asks this Court to strike: all objections to the admissibility of Dr. Holmburg's testimony and report; Defendants' Responses to paragraphs 85 through 88 of Plaintiff's Additional Proposed Findings of Fact; and Defendants' replies to Plaintiff's Responses to Defendants' Proposed Findings of Fact.

Both motions will be denied. Though I do not doubt that Defendants inadvertently stipulated to Dr. Holmburg's expert report, it would unfairly disadvantage Plaintiff to grant Defendants' motion to withdraw and clarify at this late hour after briefing for summary judgment has been completed. The stipulation also only covers summary judgment, so Defendants will be free to argue against the admissibility of Dr. Holmburg's testimony or report at trial. Furthermore, given the outcome of Defendants' motion for summary judgment, Plaintiff's motion to strike is moot.

- 9 -

**CONCLUSION**

**THEREFORE, IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 63) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' motion to Withdraw Inadvertently Stipulated Document from Evidence and to Clarify Scope of Stipulation (ECF No. 82) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Rule 7(h) Expedited Non-Dispositive Motion to Strike Defendants Palm and Robinson's Objections to Plaintiff's Expert Witness's Testimony and Report (ECF No. 84) is **denied**.

The Clerk of Court shall set a telephone conference in this case for further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this __12th__ day of May, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

- 10 -